IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| TIMOTHY S. OLGUIN<br>and BETTY GORACKE OLGUIN, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 200282N |
| v. | ) ) ) | |
| DEPARTMENT OF REVENUE,<br>State of Oregon, | ) ) ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appealed Defendant's Notices of Assessment, dated May 1, 2020, for the 2016

and 2017 tax years. The parties agreed to submit the case on stipulated facts and exhibits and

written briefings, but with an opportunity to supplement the stipulated facts and exhibits through

an evidentiary hearing. An evidentiary hearing was held remotely on January 21, 2021.

Plaintiffs appeared on their own behalf. Betty Goracke Olguin (Olguin) testified on behalf of

Plaintiffs. Chad Francis, tax auditor, appeared on behalf of Defendant. The court received

Plaintiffs' Exhibits 1 to 8 and Defendant's Exhibits A to E. Following the hearing, the court

allowed supplementary briefing to give Plaintiffs an opportunity to respond to a new issue raised

by Defendant. The court received Plaintiffs' Exhibits 9 and 10 with a supplementary brief.

Defendant's response offered no new exhibits or argument and Plaintiffs waived their reply.

Plaintiffs filed a Statement for Costs and Disbursements on February 5, 2021, and Defendant

filed its Objection on February 8, 2021.

## I. STATEMENT OF FACTS

At issue are the educational expenses of Plaintiff, Betty Goracke Olguin (Olguin), a

registered nurse (RN) who became licensed as a nurse practitioner (NP), which is a subset of

advanced practice registered nurse (APRN).[1] (Compl at 2; Stip Facts at 2, ¶¶11-12.) The Oregon NP license requires maintenance of an active RN license. (Ptfs' Ex 5 at 1.) The Executive Director of the Oregon State Board of Nursing explained that the

> "ability to practice nursing at the advanced level is predicated on being able to also practice nursing at the RN level. * * * First and foremost you are an RN and must practice per the standards of the profession in the holistic approach to the care of your patient. Your practice encompasses the standards of RN practice * * * plus the diagnostic, treatment, and prescriptive authority of the advanced practice nurse. * * * Many NPs feel their practice is more akin with that of physicians than as a nurse and, legally, it is not, it is the practice of nursing at an advanced level and the NP must practice to the legal parameters of both the RN and the NP."

(Ptfs' Ex 7 at 1.) Olguin testified that both an RN and an NP are nursing professionals capable of treating patients and teaching other nurses. An NP, but not an RN, can order tests and prescribe medication, as well as open her own practice as a licensed family practitioner. (*See* Compl at 2.)

Olguin became licensed as an RN in 1999 and maintains the license in active status. (Def's Ex A.) Starting in 2005, Olguin worked as an RN for Willamette Valley Cancer Institute & Research Center in Eugene. (Stip Facts at 2, ¶¶16.) In 2016, Olguin's employer encouraged, but did not require, her to pursue the University of Portland's NP Program. (Compl at 3.) Olguin's employer paid a small portion of her tuition, $5,250, in exchange for her promise to continue at her current place of employment for four more years. (*Id.*) After completing the NP program, Olguin received an internal job transfer as an APRN and, although the scope of Olguin's practice expanded, most of her work and responsibilities remained the same. (*Id.*)

/ / /

---

[1] APRN "is the licensing title to be used for the subset of nurses prepared with advanced, graduate-level nursing knowledge to provide direct patient care in four roles: certified registered nurse anesthetist, certified nurse-midwife, clinical nurse specialist, and certified nurse practitioner [NP]." (Ptfs' Ex 6.)

NP program participants must hold an RN license. (Stip Facts at 2 ¶¶14.) Olguin's NP coursework included graduate level study of nursing topics; for example, Olguin took "NRS 315 Pharmacotherapeutics" as an undergraduate and "NRS 608A Advance Pharmacotherapeutics" as a graduate student. (Ptfs' Resp at 2, Feb 19, 2021; *see also id.*, Ex 10.) All coursework for both degrees is under nursing "NRS," with the undergraduate courses at the 300 and 400 levels and the graduate courses at the 600 level. (*See id.*) Olguin became licensed as an NP in 2019 and maintains that license in active status. (Ptfs' Ex 8; Def's Ex A.) Olguin testified that she must remain under the supervision of a physician at her current job.

Defendant denied Plaintiffs' deduction for education expenses because it determined that they qualified Olguin for a new trade or business. (Ans at 1.) Defendant cited administrative rules identifying the "different scope of practice and level of responsibility" that Olguin can exercise as a NP. (*Id.*)

## II. ANALYSIS

A.    *Scope of Review*

The issue is whether Olguin's 2016 and 2017 tuition payments are deductible as employee business expenses under section 162(a) of the Internal Revenue Code (IRC) and Treasury Regulation section 1.162-5. Although the IRC is federal law, it is relevant here because taxable income in Oregon equals taxable income as defined in the IRC subject to certain Oregon modifications, additions, or subtractions. *See* ORS 316.022(6); 316.048.[2]

As the parties seeking affirmative relief, Plaintiffs bear the burden of proof by a preponderance of the evidence, which means "the greater weight of evidence, the more convincing evidence." *See* ORS 305.427; *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2015.

Plaintiffs can meet that burden by providing evidence supporting their position that outweighs any evidence provided by Defendant to support its position. *See DeGroat v. Dept. of Rev.,* TC 5322, 2019 WL 369166 at 2 (Or Tax, Jan 29, 2019), *as amended* (Feb 11, 2019).

IRC section 162(a) allows a deduction for all "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." "An employee must show that such expenses were made in connection with performance of services as an employee." *Hastings v. Comm'r*, 111 TCM (CCH) 1277 (2016). IRC section 262(a) disallows deductions for personal, living, or family expenses. Although tuition is often a personal expense, it can be deductible as a business expense if it meets specific criteria. *See* Treas Reg § 1.162-5(a). Deductible tuition expenses must either be for education expressly required to retain one's current employment or else for education that "[m]aintains or improves skills required by the individual in [her] employment or other trade or business[.]" *Id.* Even if one of those criteria is met, no deduction is allowed if the education fulfills minimum requirements for the taxpayer's employment or if the education "will lead to qualifying [her] in a new trade or business." Treas Reg § 1.162-5(b)(2), (3); *see Carroll v. Comm'r*, 418 F2d 91, 95 (7th Cir 1969) (holding police officer's expenses associated with obtaining a degree in philosophy in preparation for law school were not deductible, even though police department order encouraged officers to attend college and rearranged their schedules to allow them to do so).

B.    *Plaintiffs' Argument*

1.    *Maintaining or improving required skills*

Plaintiffs claim Olguin's education "maintains or improves" skills required for her employment and involves the same general type of work as is involved in an RN position. (Ptfs' Resp MSJ at 1.) Plaintiffs' assert that the NP trade is an expansion of the RN trade. (*Id.*) An

NP is an RN first and foremost and encompasses the standards of an RN. (Ptfs' Ex 7 at 1.) The graduate nursing courses Olguin took to become an NP built upon her undergraduate nursing courses and were all part of the nursing trade. (Ptfs' Resp at 2, Feb 19, 2021.)

2. *Qualification for a new trade or business*

Plaintiffs assert that the NP program did not qualify Olguin for a new trade or business. (Compl at 2.) They cite Treasury Regulation section 1.162-5(b)(3), which states, "[i]n the case of an employee, a change of duties does not constitute a new trade or business if the new duties involve the same general type of work as is involved in the individual's present employment." (Ptfs' Resp MSJ at 1.) Plaintiffs argue "that the [NP] role is an expansion of the [RN] trade and that the change of duties does not constitute a new trade but is the same general type of work." (*Id.* at 1-2.)

Plaintiffs cite as relevant examples the allowable education deductions for a teacher to principal, psychiatrist to psychoanalyst, and dentist to orthodontist. (Ptfs' Resp MSJ at 2.[3]) The Treasury Regulations say that "all teaching and related duties shall be considered to involve the same general type of work." (*Id.*) Plaintiffs note that Oregon requires three years' experience as a teacher to become a principal. (*Id.*) Similarly, "a psychoanalyst must first be either a psychiatrist, psychologist, or social worker by training before specializing in psychoanalysis." (*Id.* at 3.) The dentist who became an orthodontist was considered to be in the same trade "even though new licensure was obtained, a specialty with new tasks and activities was acquired, and a change in job titles occurred * * *." (*Id.* at 4.) Plaintiffs argue that the common denominator among these examples and Olguin's education as an NP is that "one could not have access to the

---

[3] The teacher and psychiatrist examples are given in the Treasury Regulation. The dentist example is from Revenue Rule 74-78, in which "the IRS ruled that a dentist engaged in the full-time practice of general dentistry, who returned to dental school on a full-time basis to study orthodontics, was entitled to deduct his costs of the orthodontics education." (Ptfs' Resp MSJ at 3.)

advanced field without first being licensed in the initial trade." (*Id.* at 6.) Thus, each involves the same general type of work and does not qualify as a different trade or business. (*Id.* at 5.)

## C. *Defendant's Argument*

### 1. *Maintaining or improving required skills*

Defendant argues the NP program did not maintain or improve skills in the manner and context laid out in Treasury Regulation section 1.162-5. (Def's Resp at 1.) "Maintaining or improving skills is mentioned in Treasury Reg. 1.162-5(a) but is further defined and described in Treasury Reg. 1.162-5(c) as 'including refresher courses or courses dealing with current developments.' " (*Id.*) Defendant asserts that the education that Olguin received for her NP degree went beyond maintaining or improving the skills required by her employer or her position as an RN. (*Id.*) Defendant also observes that the education was not required by Olguin's employer for her to maintain her position as an RN. (*Id.* at 1.)

### 2. *Qualification for a new trade or business*

Defendant argues that the education qualified Olguin for a new trade or business with responsibilities and qualifications of a different nature from those associated with an RN. (Def's Resp at 1.) Examples of the new responsibilities and qualifications include the ability to prescribe medications, write medical orders, diagnose and treat patients, and open her own practice as a licensed independent practitioner. (*Id.* at 2.) Without the education, Olguin could not qualify or be hired as an NP. (*Id.*)

With respect to the "teacher to principal, psychiatrist to psychoanalyst, and dentist to orthodontist" examples, Defendant responds that "a comparison must be made between the types of tasks and activities which the taxpayer was qualified to perform before the acquisition of a particular title or degree, and those which he is qualified to perform afterwards." (Def's Resp at

2) (quoting *Glenn v. Comm'r*, 62 TC 270, 274 (1974). Defendant cites *Barathi v. Dept. of Rev.*, TC-MD 180385G, 2020 WL 417570, (Or Tax M Div, Jan 27, 2020), in which the court observed that "qualification in a subspecialty keeps one within the same trade, whereas qualification in a higher discipline does not." (*Id*. at 3.)

D.     *Whether Olguin's Education Maintained or Improved Required Skills*

Education expenses may be deductible if they maintain or improve the skills required in the taxpayer's employment. Treas Reg § 1.162-5(a)(1). Education maintains or improves skills required in employment when the skills improved bear a "proximate and direct relationship to the taxpayer's trade or business." *Carroll v. Comm'r*, 51 TC 213, 218 (1968), *aff'd* 418 F2d 91(7th Cir 1969). "A precise correlation is not necessary, and the educational expenditure need not be for training which is identical to the [taxpayer's] prior training so long as it enhances existing employment skills." *Boser v. Comm'r*, 77 TC 1124, 1131 (1981) (holding an employee of an airline could deduct expenses of operating an aircraft to the extent that such operations were needed to maintain his employment skills, even though not strictly required by his employer). But improvement of general skills is not enough. *Love Box Co., Inc. v. Comm'r*, 842 F2d 1213, 1216 (10th Cir 1988) (holding expenses of attending seminars that promoted "broad attributes" "such as honesty, self-reliance, and dependability" were not deductible education expenses even though employees were paid to attend); *see also McAuliffe v. Comm'r*, 40 TCM (CCH) 420 (1980) (the study of English literature was not directly related to the oral and written advocacy skills required by an appellate attorney).

Here, the relevant inquiry is whether Olguin's education expenses have a direct and proximate relationship to her work as an RN. A review of her coursework to become an NP reveals that many classes involved advanced coverage of topics that Olguin studied to become an

RN.[4] The similarities in course topics indicate that the graduate program enhanced existing nursing skills gained through the undergraduate program. Additionally, a master's degree in nursing satisfies the educational requirements for an RN license, further supporting some overlap of the educational requirements for the two licenses. OAR 851-031-0006(1)(a)(B). The NP program required courses related to skills and knowledge used in Olguin's employment as a nurse. The fact that Olguin's employer encouraged her to seek her graduate degree in nursing and even paid a small portion of the expense lends some further support to this conclusion. Taken together, the court finds that Olguin's education bore a direct and proximate relationship to her wok as an RN and therefore improved her skills within the meaning of Treasury Regulation section 1.162-5(a)(1).

E.  *Whether Olguin's Education Qualified her for a New Trade or Business*

Education expenses are not deductible if they qualify the taxpayer for a new trade or business. Treas Reg § 1.162-5(b)(3). A new trade or business involves performance of job duties significantly different from the type of work the taxpayer previously performed. *Id.* ("In the case of an employee, a change of duties does not constitute a new trade or business if the new duties involve the same general type of work as is involved in the individual's present employment."); *Glenn*, 62 TC at 275 (court has disallowed educational expense deduction where it found "activities and abilities to be significantly different"). This is an objective standard; taxpayer's subjective intent in obtaining the education is not determinative. *Browne v. Comm'r*, 73 TC 723, 727 (1980) (holding a bookkeeper and tax preparer who received a bachelor's degree

---

[4] At the undergraduate level, Olguin took courses including "NRS 311 Information Systems in Health Care," NRS 332 and 331, Physiological Clinicals and Psychosocial Clinicals, respectively, and "NRS 419 Leadership in Nursing," as well as several "adaptation" courses for interacting with different categories of patients. (Ptfs' Ex 10 at 1.) At the graduate level, she took courses including "NRS 650A Informatics in Healthcare," "NRS 675A Directed DNP Clinical," and "NRS 691A Leadership in Complex Health Environments," as well as several "management" courses for interacting with different categories of patients. (*Id.* at 2.)

in business administration qualified for a new trade or business as a Certified Public Accountant (CPA), even if she did not plan to take the CPA exam).  Furthermore, a taxpayer may become qualified for a new trade or business even if actual job duties do not change.  Treas Reg 1.162-5(b)(3), Ex 2; *Robinson v. Comm'r*, 78 TC 550, 556-57 (1982) (finding taxpayer's "qualification as an RN removes any attendant expenditures from the realm of deductibility regardless of the actual change in [her] employment duties").

In *Glenn*, a licensed public accountant (PA) already working in the field claimed expenses associated with preparing for and taking a CPA exam.  62 TC at 271-72.  Even though both PAs and CPAs are licensed to practice public accountancy, the court found significant differences between their scopes of practice.  *Id*. at 275.  The court found that a CPA can

> "advise taxpayers as to their rights and liabilities under federal or state taxing statutes as entail or are based upon accounting procedures;  * * * represent taxpayers before governmental departments of the state and of the United States in matters pertaining to taxes * * * and probably most significantly of all, * * * hold himself out to the public and sign his name accompanied by the designation that he is a licensed CPA."

*Id.* at 275-76.  Based on those differences, the court found a CPA is "a higher level of professional competence than the status of public accountant."  *Id.*  Thus, PAs and CPAs were considered separate trades or businesses.  *Id.* at 277.  The court denied the taxpayer's appeal, though noted the case was "extremely close and not entirely free from doubt."  *Id.* at 276.

In *Robinson,* the taxpayer deducted the costs of a 4-year nursing degree.  78 TC at 550.  Taxpayer was qualified and worked as a Licensed Practical Nurse (LPN) and became an RN after completing the program and passing the state examination.  *Id*.  The court held that an RN license conferred a heightened level of independence and professional judgment, and an increase in skills and supervisory power that distinguished it from the LPN in job function and responsibility.  *Id*. at 558.  The court noted that, "[w]hile there is little doubt that some functions

of registered and practical nurses are identical, RNs provide assessments of actual or potential health needs and are empowered to delegate nursing functions to other nursing personnel. LPNs do not possess these powers." *Id*. at 553. The court also noted the differences in degree programs: an LPN required 9 to 12 months of education whereas an RN required a college degree. *Id.* at 554-55. Taxpayer's education qualified her to perform duties and exercise judgment which she was prohibited from doing by state regulation and hospital policy as an LPN. *Id*. at 556. Notwithstanding the fact that she performed some of the same job duties as an RN as she had as an LPN, her nursing degree qualified her for a new trade or business. *Id*. at 557.

Here, the court first notes the different scopes of practice of an RN and NP under Oregon law. A NP is "a registered nurse who has been licensed by the [Oregon State Board of Nursing] as qualified to practice in an expanded specialty role within the practice of nursing." ORS 678.010(6).[5] Unlike RNs, NPs are authorized to complete and sign reports of death; to prescribe drugs to patients; and to provide diagnostic treatment and counseling. ORS 678.375(3)-(4); OAR 851-050-0005(5). Additionally, NPs are authorized to independently provide healthcare in a variety of specialty areas including, midwifery, gerontology, and pediatrics, among others. OAR 851-050-0005(9).

The scope of practice for an RN similarly encompasses a variety of roles, including conducting assessments, developing conclusions on client problems or risks, developing and implementing a client-centered plan, and evaluating client responses. OAR 851-045-0060(3). Additionally, an RN may assign and supervise care performed by other RNs as well as lower

---

[5] The phrase "expanded specialty" implies that an NP license permits one to both expand the duties of an RN while at the same time narrowing the scope and specializing in a different field of nursing.

level nursing professionals such as LPNs. OAR 851-045-0060(4). Overall, the scope of practice for an RN is characterized by less responsibility and independence than a NP.

The court next considers the educational and licensure requirements to become an RN and NP. To become an NP, an applicant must hold a current unencumbered RN license in the State of Oregon and complete various education and practice requirements. OAR 851-050-0002, OAR 851-050-0004. The education required for an NP includes obtaining a master's degree or a doctorate in nursing along with the "completion of a nurse practitioner program" that focuses on the NP's specialty area. OAR 851-050-0002(1)(b)(A)-(B).[6] NPs must meet certain practice hours following the completion of a nurse practitioner program. OAR 851-050-0004(1). The applicant must then earn national certification from the Oregon State Board of Nursing through an exam requirement. OAR 851-050-0002(1)(d); ORS 678.050.

By comparison, an RN must earn an associate's, bachelor's, or master's degree from an accredited nursing education program; pass the nursing exam and complete certain practice requirements. OAR 851-031-0006(1)(a)–(c). Unlike an NP, an RN need not maintain a lower order of nursing license. OAR 851-031-0006. Overall, the court finds that the education and licensing requirements for a NP are greater than those of an RN, although they bear some similarities.

NPs are characterized by a high degree of specialization in a particular practice area accompanied by greatly enhanced responsibilities and independence within that practice area. Notably, an NP may diagnose, prescribe medication, and even operate her own practice. Thus, an NP is a "higher discipline" than an RN rather than a "subspecialty," which distinguishes it

---

[6] NP practitioner programs are "a minimum of one academic year in length" and focus on the NP's specialty area. OAR 851-050-0001(1), (3).

from the examples Plaintiffs identified concerning teachers to principals,[7] psychiatrists to psychoanalysts, and dentists to orthodontists. *Barathi*, 2020 WL 417570 at *2. For these reasons, the court concludes that Olguin's education qualified her for a new trade or business.

## III. CONCLUSION

Upon careful consideration, the court concludes that, although Olguin's education maintained and improved her skills as an RN, it also qualified her for a new trade or business as an NP. Thus, Plaintiffs' deduction for her education expenses under IRC section 162(a) is disallowed. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

IT IS FURTHER DECIDED that Plaintiffs' request for costs and disbursements is denied because they are not the prevailing party under ORS 305.490(3).

Dated this _____ day of March 2021.

_____
ALLISON R. BOOMER
PRESIDING MAGISTRATE

***If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.***

***Some appeal deadlines were extended in response to the Covid-19 emergency. Additional information is available at <u>https://www.courts.oregon.gov/courts/tax</u>***

***This document was signed by Presiding Magistrate Allison R. Boomer and entered on March 29, 2021.***

---

[7] Teaching appears to be given special treatment by the regulation, which states that, for purposes of determining whether the education qualifies taxpayer for a new trade or business, "teaching and related duties shall be considered to involve the same general type of work." Treas Reg § 1.162-5(b)(3)(i).